RIDGELEY NATIONAL BANK, Appellant, v. BARSE LIVE STOCK COMMISSION COMPANY, Respondent.

Kansas City Court of Appeals, June 5, 1905.

PRINCIPAL AND AGENT: Collection: Substitution of Securities: Conversion. An agency to collect does not imply authority to make any arrangement short of actual collection; so where a commission company had authority as agent of a bank to call in the cattle securing a loan, sell the same and remit the proceeds, no authority was conferred to take a second note and mortgage on the cattle in lieu of the existing one; and the holder of said second note cannot maintain conversion against the bank's agent who sold under the first mortgage.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

AFFIRMED.

*Milton Moore* and *Stewart Taylor* for appellant.

(1)    The Carthage bank's mortgage was satisfied when Siegel-Sanders received from the plaintiff the

proceeds of the renewal paper, being the exact sum required to discharge it. Wyman v. Hevard, 9 Ok. 35. (2) The evidence of authority in Siegel-Sanders Commission Company to receive payment for the Carthage bank, was complete, and the court erred in refusing to submit the question to the jury. (3) Siegel-Sanders Commission Company are estopped to dispute the validity, and priority of plaintiff's mortgage, and the defendant claiming to act under and as agent for Siegel-Sander Commission Company, is subject to the same estoppel. (4) The transmission of the proceeds to Siegel-Sanders can constitute no defense, for if Siegel-Sanders Commission Company was agent of the Carthage bank, as defendant claims, for the purpose of receiving the proceeds, then that company was equally the agent of the Carthage bank when it sold the renewal paper.

*Haff & Michaels* and *L. W. McCandless* for respondent.

(1) A second mortgagee of chattels cannot maintain an action of trover on account of the conversion of the chattels. Bank v. Land Co., 152 Mo. 145, 157; Payne v. Dor, 1 Durnf. & East. (Term Rep.), 55, per Lord Mansfield, C. J.; Gordon v. Harper, 7 Durnf. & East. (Term Rep.), 9, 12; Owen v. Knight, 4 Bing. (New Cas.), 54, 57; Webster v. Heylman, 11 Mo. 428; Meyers v. Hale, 17 Mo. App. 204; Frazier v. Railway, 104 Mo. App. 355, 360; Jones on Chattel Mortgages (3 Ed.), sec. 426, p. 436. (2) Authority in the Siegel company to receive payment of mortgages held by the Carthage bank, did not give the Siegel company implied authority to accept renewal paper in discharge of the Carthage bank's mortgages. Cummings v. Hurd, 49 Mo. App. 139; 1 A. & E. Encyc. Law (2 Ed.), "Agency," at page 1002; McAlpine v. Cassidy, 17 Tex. 450; Buckwalter v. Craig, 55 Mo. 71; Moore v. Pollock, 50 Neb. 900; Willis v. Gorrell, 102 Va. 746; Hill v. Bess, 40 S. W. (Tex. Civ.

App.) 202; Behrens v. Rogers, 40 S. W. (Tex. Civ. App.) 418; Cooney v. Wringer Co., 101 Ill. App. 468, 474; Matthews v. Hamilton, 23 Ill. 416, 418-419; Miller v. Edmonston, 8 Blackf. (Ind.) 291.

BROADDUS, P. J.—This is a suit for the alleged conversion of one hundred and twenty head of cattle. The following facts are admitted: On October 30, 1900, one, Benjamin Funk, a resident of the State of Kansas, executed a note payable to the Siegel-Sanders Live Stock Commission Company of Kansas City, Missouri, for the sum of $4,106.85 due February 4, 1901, and executed a mortgage on one hundred and twenty head of cattle then on what was known as the Funk farm situated in McLane county, Illinois. On January 10, 1901, he also executed a second mortgage on said cattle to secure a note payable to said commission company for the sum of $4,285.14 due August 10, 1901. The form of the two mortgages is the same—both notes are payable at Kansas City, Missouri, and both mortgages contain a provision that the cattle shall be shipped to the said commission company at Kansas City, Missouri, to be sold on the market.

The plaintiff claims under the second mortgage. The said commission company procured said Funk, the owner of the cattle, to execute the second mortgage as a renewal of the first. The note secured by the latter belonged to the National bank of Carthage, Missouri. The note secured by the second mortgage was sold and assigned by said commission company to one Ridgeley, who sold and transferred it to the plaintiff, an Illinois banking corporation; but the said commission company failed to apply the proceeds on the first indebtedness due the Carthage bank.

On the 4th of February, 1901, the cattle were shipped to East St. Louis, consigned to said commission company who directed the defendant to receive and sell them. This the latter did, and after deducting expenses

sent to the said company by the hands of Funk a check for $4,200.75, the net proceeds of the sale and which were paid by it to the National Bank of Commerce who held the note secured by the first mortgage for collection and which paid it to the Carthage bank.

Many questions are raised by the respective parties in the briefs. The first in importance is that of authority in said commission company to extinguish the lien on the cattle of the National Bank of Carthage by taking in renewal thereof the second note and mortgage under which plaintiff claims to maintain this suit.

The evidence shows that the Bank of Carthage had bought many notes, other than that mentioned, of said commission company and that said bank authorized the latter, where no extension of the time of payment of any of its said notes had been granted, to have the cattle mentioned in the mortgages shipped to said company at Kansas City; for it to sell them on the market and receive the proceeds thereof as agent of said bank. There was no positive evidence that said commission company had any authority to extend the time of payment of any of these notes or to renew them. Much of the correspondence between the said bank and the commission company relating to the other notes transferred by the latter to the former was in evidence. But we have found nothing in this correspondence, nor in any other evidence, that shows any authority in said commission company from said bank than as stated to take control of the mortgaged cattle, sell them on the market and hold the proceeds to be applied on the bank's notes.

Plaintiff contends, however, that the Siegel-Sanders company did not take the new note and mortgage for the purpose of selling it to the Carthage bank but for the purpose of selling it on the market and receiving the proceeds as payment of the Carthage bank's note the same as if they had sold the cattle, and it is but splitting hairs that there is a difference between selling the cattle

on the market and selling new paper on these cattle on the market, so far as the question of agency is concerned. In neither case would the Carthage bank be bound until the proceeds 'or avails' came into the hands of Siegel-Sanders. In either case the Carthage bank would be bound when its agent received the money." In a short manner of stating the proposition, it was a collection.

The plaintiff's reasoning leaves out of consideration that the act of the commission company in taking a renewal note and mortgage was in fact substituting one security for another. The authority to sell the mortgaged cattle and receive the proceeds of the sale did not authorize said company to interfere with the bank's security to the extent of taking a new note and mortgage. The authority conferred was in reference to the mortgaged property and not to the securities. We have been unable to find any particular evidence in the record that conferred such authority, and plaintiff's counsel have been unable to indicate such—and their insistence is, that it may be inferred from the general course of dealing. But the scope of the commission company's authority, as stated, did not go beyond protecting the bank's interest in the property itself, and selling the same and collecting the proceeds. Plaintiff admits the full force of the rule, as it must: "An agent authorized merely to collect a demand or to receive payment of a debt, cannot bind his principal by any arrangement short of an actual collection and receipt of the money, and he cannot therefore take in payment the note of the debtor either to himself or to his principal." Yet, it insists that, "on the other hand, when the agent is authorized to transact all the principal's business of a certain kind, the very breadth of the employment and variety of the duties to be performed necessarily involve more or less of discretion and choice of methods, and render impracticable, if not impossible, much of particularity or precision, either as to the exact means and method to be employed, or as to the scope or extent

of the authority itself. When so little is expressed, more may well be applied. The fact of such an authority, of itself, presupposes a general confidence is bestowed upon the agent, and a general committal to his discretion and judgment of all beyond the essential objects to be attained and the outlines of the course to be pursued. It may not unreasonably be presumed, where nothing is indicated to the contrary, that such an agent possesses those powers which are commensurate with his undertaking, and which are usually and properly exercised by other similar agents under like circumstances." Citing Mechem on Agency, sec. 285, p. 188.]

The meaning of the foregoing is that, where an agent is authorized to transact all of the principal's business discretion is vested in the agent to use such means and methods as may be necessary to accomplish the object of his agency. That is a correct proposition of law that we do not deny as applied to a general agency. But the rule has no application to this case. The Siegel-Sanders Commission company had no authority to transact all the business relating to the Carthage bank's loans as aforesaid, but, on the contrary, its powers were limited, as stated, to the selling of the mortgaged cattle, collecting the proceeds of sale and holding them for the bank to be applied on its notes. The agent had all the necessary powers for that purpose, and no more. The method by which the bank's interest was to be protected was prescribed. In such circumstances the agent is bound to pursue the prescribed method. [Reinhardt on Agency, sec. 236; Mechem on Agency, sec. 409.]

Our holding on this question precludes the necessity of passing on other questions raised by appellant. It follows, therefore, that plaintiff had no lien on the cattle, and therefore cannot maintain this suit. The rule of *caveat emptor* applies.

Affirmed. All concur.